## Morgan, Sr., et al. v. Lewis.

(Decided December 15, 1916.)

### Appeal from Leslie Circuit Court.

1. Husband and Wife—Furnishing Consideration to Buy Land—Rights of Husband's Creditors.—If a wife furnishes the consideration for real estate which she permits to be conveyed to her husband, but without any agreement that he should repay her, and she acquiesces in the title being held by'him until after the husband has contracted debts upon the faith of his being the owner of the property, she will not afterwards, in a contest between her hus- band's creditors and hers, be given preference over them in the distribution of her husband's estate, nor will her claim prevail to any extent against such creditors.

2. Husband and Wife—Rights of Husband's Creditors.—Land was
   deeded to the husband in 1871, which the wife contends was paid
   for with her property which she inherited from her father. The
   title thus remained until a judgment was obtained against the
   husband as a surety on an administrator's bond, which judgment
   was recovered some 27 years after the conveyance of the land to
   the husband. After the recovery of the judgment the husband
   conveyed the land to his wife. Held, 'that in a suit to subject
   the land by the judgment creditor the deed executed by the hus-
   band to the wife would be canceled and the land appropriated to
   the payment of the judgment against the husband, the creditors'
   right to payment taking precedence of any claim alleged by the
   wife in and to the land.

3. Judgment—Revival—Limitation of Actions.—If an execution is
   raised upon a judgment within the limitation period fixed by law
   and delivered by the plaintiff in the execution to the sheriff, this
   is sufficient to keep the judgment alive and to renew the limita-
   tion period, although it does not appear what action, if any, the
   sheriff took under the execution.

4. Judgment—Acts of Officer Under Execution.—In such case it will
   be presumed in favor of the plaintiff in the execution that the
   sheriff did his duty by endeavoring to make the money; but if not,
   the plaintiff's rights should not be impaired because of any dere-
   liction of the officer when the former has done all that the law
   requires of him.

5. Appeal and Error—Pleading Before Special Judge Part of Record.
   —When a case is tried before a special judge, and in the agree-
   ment to that effect it is stipulated that pleadings and orders may
   be made before such special judge without being made in court,
   a pleading filed before such special judge and considered by him,
   will be treated as a part of the record, although there is no order
   of court showing it to have been filed.

J. M. MUNCY, J. M. BICKNELL and O'REAR & WILLIAMS
for appellant.

CLEON K. CALVERT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 6, 1898, the appellee (plaintiff below)
through his statutory guardian, John W. Harvey, re-
covered judgment in the Leslie Circuit Court against
appellant, A. B. Morgan, Sr. (defendant below), and
Zachariah Morgan, sureties upon the bond of the admin-
istrator of Daniel Lewis, the father of G. C. Lewis, for
the sum of $2,416.87, to be credited as of that date by
the sum of $1,375.75, the net judgment being $1,041.12.

On January 15, 1906, plaintiff having arrived at the age of 21 years, brought this suit upon a return of no property found against A. B. Morgan, Sr., Zachariah Morgan and some other defendants, by which it was sought to appropriate to the payment of the judgment certain credits and evidences of debt which it is alleged the other defendants owed the two Morgans. These defendants, in addition to being made parties to the suit, were served with attachments, and the funds which it is claimed that they owed to the judgment debtors were attempted to be garnished. During the progress of the cause the wives of the two Morgans were made defendants, it being alleged against them that their respective husbands conveyed, or caused to be conveyed, to each of them fraudulently and with the intent to cheat, hinder and delay the creditors of their husbands, certain described tracts of land which are sought to be appropriated to the payment of the judgment of plaintiff by having the deeds thereto executed by the husbands cancelled and the lands sold. Before the submission of the case Zachariah Morgan paid his part of the judgment and he and the defendants who had been brought into the case on his branch of it were proceeded against no further, the suit appearing to have been abandoned so far as they were concerned.

The allegations made in the petition and amendments as to the defendants, A. B. Morgan, Sr., and wife, were each denied by them, and it was affirmatively pleaded that the lands sought to be subjected in the manner stated were in truth and in fact the property of the wife of A. B. Morgan, Sr., the appellant, Martha Morgan. These allegations being controverted, and the cause being submitted by agreement to Hon. J. M. Benton, the Circuit Judge of the Clark Circuit Court, he rendered judgment in favor of the plaintiff directing the money in the hands of the garnishees to be applied to the payment of the remaining portion of the indebtedness after crediting it by the sum paid by Zachariah Morgan, and ordering a sufficiency of the land sold to pay any deficit, should any exist, and from this judgment, A. B. Morgan, Sr., and his wife, Martha Morgan, prosecute this appeal.

The testimony in the case may be said to show quite conclusively these facts: The defendant, Martha Morgan, is the daughter of John D. Pace. She had two sisters, Eliza Pace and Nannie Pace, and a brother, John

W. Pace, and the four, with the widow of John W. Pace, were the only heirs at law left by the latter at the time of his death, which occurred some time previous to the 28th day of February, 1871. On that day two of the heirs, John W. and Eliza Pace, each deeded their one-fourth undivided interest in and to a tract of land consisting of about 1,000 acres in Leslie County, which they inherited from their father, to the defendant, A. B. Morgan, Sr.

On April 18, 1884, Nannie Pace conveyed her interest as an heir of John D. Pace in said tract of land to A. B. Morgan, Sr., and he, somewhere about this time, purchased the dower interest of the widow of John D. Pace in and to the same tract. These conveyances vested in A. B. Morgan, Sr., the dower interest of the widow in said tract of land and a three-fourths undivided interest in the fee to same, his wife owning the other one-fourth undivided interest by inheritance from her father. From time to time small tracts were sold by A. B. Morgan, Sr., and his wife from the 1,000-acre tract, and timber was likewise sold from it, and the persons garnisheed herein are those who were indebted for some of the unpaid purchase money for land thus purchased by them, or for timber which had been purchased from the land. These attached debts were created since the obtention of the judgment sought to be collected herein, and they were made payable to the defendant, Martha Morgan, instead of to her husband, which transactions are attacked as having been fraudulently made for the purpose of defeating the collection of this and other debts of the husband. With the proceeds of land sold, as hereinbefore stated, the lands in controversy were purchased and the deed made to A. B. Morgan, Sr.

On December 4, 1902, A. B. Morgan, Sr., and wife deeded the land to one Jasper Morgan for a recited consideration of $1,200.00, only $25.00 of which was paid at the time, and on December 15 following, being only fourteen days thereafter, Jasper Morgan and wife conveyed the land to the defendant, Martha Morgan, for the same recited consideration. Neither of them was actually paid. The first deed just mentioned is claimed to have been made in satisfaction of a title bond which had been executed to Jasper Morgan by A. B. Morgan, Sr., and wife in 1897, and after he became surety on the bond upon which the judgment was re-

covered, but before it was obtained. However, this bond is not filed in the transcript, and we know nothing of its existence or its contents except the statements of A. B. Morgan, Sr., found in his testimony.

Somewhere about the date of the execution of the deed to Jasper Morgan, executions against A. B. Morgan, Sr., amounting to about $110.00 were levied upon the land, and it was, according to the oral testimony, advertised to be sold, and it is claimed by the defendants that it was sold for the amount of the execution, but we are not favored with any record evidence of this fact and it is certain that no deed was ever executed to Martha Morgan, who claims to have purchased it at such execution sale. The husband testified, however, that his wife did pay the amount of the executions, which stopped the proceedings of the sheriff thereunder.

It is insisted that this transaction put the title to the land in the defendant, Martha Morgan, and of course extinguishing all interest in it theretofore owned by her husband. It is furthermore insisted by defendant, Martha Morgan, that the consideration for the deed of John W. Pace and Eliza Pace to her husband for their respective interest in the 1,000 acres of land before mentioned was a conveyance by her of her one-fourth interest in and to another body of land which her father owned and in which she inherited a one-fourth interest situated in Clay County, but we fail to find in the record any evidence of this fact, there being no deed or other character of paper indicating any conveyance by her to any lands in the latter county. But whether true or false cannot affect the question involved as we shall later see.

Because of these two contentions it is insisted that the only interest, if any, which A. B. Morgan, Sr., who is the judgment debtor, owned in any of the property sought to be subjected is a one-fourth undivided interest which he obtained from his purchase from Nannie Pace, and that the judgment subjecting the two interests of John W. and Eliza Pace deeded to him in 1871 is in any event erroneous. But it is further insisted that none of the land should have been subjected to the payment of the judgment because of the contention that defendant, Martha Morgan, obtained the entire title to it by virtue of the supposed execution sale referred to.

Considering the last point mentioned, the evidence does not convince us that the proceedings under the execution divested A. B. Morgan, Sr., of title to the land, so as to put it beyond reach of his creditors. It is not satisfactorily shown that these executions were discharged with money belonging to Martha Morgan, although it is attempted to be so stated in a way by her husband, but when we reflect that his testimony shows that, as the head of the household and the title holder of all the land which the family occupied and enjoyed, he transacted all the business in the way of selling timber and managing the land, and in the absence of any direct testimony to the effect that this money was paid by Mrs. Morgan, and the further fact that there is no deed of any character or other record evidence showing that she was the purchaser at such execution sale, if there was one, and the still further fact that these proceedings were had after the obtention of the judgment sued on, we are disinclined to give that transaction the effect insisted upon by counsel for appellants. On the contrary, there is found in the evidence room for the belief that this transaction was but a subterfuge resorted to by appellants for the purpose of placing the property beyond the reach of the creditors of the husband, and that it was a device resorted to by them in furtherance of such fraudulent design. This conclusion is still further justified because of the great disparagement between the value of the land and the amount claimed to have been paid by Mrs. Morgan in satisfaction of the executions against her husband. The debt sought to be made by them was only $110.00 and a small amount of cost, whereas the value of the land was more than $1,200.00, and this gross inadequacy of price is always a badge of fraud, especially if the parties occupy a confidential relation toward each other.

Considering now the claim that Martha Morgan paid for the two interests of John W. and Eliza Morgan with her interest in the Clay County land, and conceding that she did this in 1871 when the deed was made to her husband, it is apparent that under the repeated rulings of this court she cannot, at this late day, have a trust declared in her husband for her benefit as against the rights of her husband's creditors, as is claimed she may do under the doctrine of the case of Bohannon v. Bohannon, 29 Ky. Law Rep. 143, and kindred cases from this court. The contest in that case was not between

the wife and creditors of the husband who became such while he held the legal title to the property sought to be subjected, but it was between her and the heirs of her husband; and her right to supersede the heirs in the payment of her alleged claim against her husband was based entirely upon a contract previously entered into between the two, and the fact of such a contract is emphasized throughout the opinion. The wife in that case at the time of her marriage was the owner of real and personal property amounting in the aggregate to between $10,000.00 and $14,000.00. After the marriage this property was converted by the husband into cash with which he purchased real estate, taking title to himself. In a suit to settle his estate and to divide the proceeds among the heirs, the widow asserted her claim upon the ground that the property which she owned at the time of her marriage was agreed "To be held in trust for her by her husband, and to constitute a debt from him to her." In upholding her claim as against the heirs, this court said:

"We see no hardship in upholding the contract of the husband, when he does so convert his wife's property, that he will hold it in trust for her benefit, and not leave her penniless when he dies."

After reciting that the evidence shows that the husband, throughout his life, recognized his obligation to his wife to recompense her for the property which he had used belonging to her, and continuing to promise that he would make settlement with her, thus evidencing the trust, the court, continuing, says:

"The appellant does not claim to be paid until after her husband's other creditors are satisfied. She, as we understand it, only claims the residue of the estate as against the distributees of her husband. This is the extent to which we can enforce the trust. (Long v. Deposit Bank, 28 Ky. Law Rep. 913.)"

In the Long case referred to in that opinion the husband conveyed a tract of land to his wife in consideration of an alleged debt which he owed to her, amounting to $3,000.00, evidenced by his promissory note. Two years after this conveyance, the Deposit Bank, holding a debt against the husband for $3,089.62, instituted suit against both husband and wife, seeking to set aside the conveyance made to the latter by the former, and to subject the land to the payment of its debt. The $3,000.00 which he owed her was the proceeds of a sale

of a tract of land owned by the wife which had been sold in 1887, and which had been used by the husband, and the debt of the bank was in existence at the time the note was made by the husband to the wife acknowledging that debt. This court, in upholding the judgment below canceling the deed and appropriating the property to the payment of the bank's debt, after reviewing many other cases from this court, said:

"She could not hold him out as the owner of the property, or allow him to hold himself out as such, and thus create debts without losing her right to enforce her equity against her husband to the prejudice of the creditors of her husband whose debts were thus created."

Other cases announcing the same rule are Maraman v. Maraman, 4 Met., 76; Pryor v. Smith, 4 Bush, 372; Darnaby v. Darnaby, 14 Bush, 485; Hall v. Hall, 11 Ky. Law Rep. 716; Carter v. Strange, 12 Ky. Law Rep. 642; Clay v. Trimble, 13 Ky. Law Rep. 61; Farmers' & Drovers' Bank v. Unser, Idem, 965; Meade v. Stairs, 88 Ky. 66. In the last case such dealings between husband and wife are thus disposed of by this court:

"It would, moreover, give the husband a delusive credit, and enable him to deceive those dealing with him upon the strength of appearances which, in this instance, were known by the wife, and acquiesced in by her."

Waiving the question that the trust, in the case now under consideration, in the real estate purchased by the deed from John W. and Eliza Pace could be created in favor of the wife by parole, and treating her claim as one which might be so created, under the repeated adjudications from this court denying her claim as against the creditors of her husband, we are compelled to hold that the two deeds, one of appellants to Jasper Morgan in 1902, and the other almost immediately following from him to Martha Morgan were fraudulent as to the husband's creditors, as was also the execution of the notes to the garnisheed defendants. It will be observed that the very foundation of trusts in favor of the wife which have been upheld and enforced by this court, is lacking in the instant case, because nowhere do we find that there was ever an agreement between Martha Morgan and her husband that he should hold any of the property in trust for her. Nor did the latter at any time before the creation of the debt sued on, through any

word or act, recognize the existence of any such trust, or any claim of his wife against him. If it be a fact that Martha Morgan paid the consideration for the deed executed by John W. and Eliza Pace in the way she contends, she then permitted her husband to appear to be the owner of the land and to thereby invest him with a false credit which no doubt induced the county court to accept him as a surety on the bond upon which the judgment in favor of appellee was recovered. While equity has leaned, and no doubt will continue to lean, toward the inclination to enforce such trusts between husband and wife as between the latter and others possessing no intervening rights, it has not, nor will it recognize such trusts or enforce them as against those who have obtained rights upon the false credit which the acquiescence of the wife has permitted to appear.

The suit is sought to be defeated upon the ground that the execution upon whose return the suit is based was issued more than seven years after the judgment was recovered, and it is claimed that this releases the surety, A. B. Morgan, Sr., by virtue of the provisions of Sec. 2548 of the Kentucky Statutes, which is:

"A surety shall be discharged from all liability under any judgment or decree, after the lapse of seven years without any execution, issued thereon and prosecuted in good faith for the collection thereof."

It is not at all clear that the provisions of that section would apply to the facts of this case because of the plaintiff in the judgment being an infant at the time it was recovered, and the execution called in question was issued within less than a year after he attained his majority. Especially so, in view of the fact that the record discloses that his guardian removed from the state and ceased to exercise any control over the infant's property, including, of course, the judgment. But, waiving this point, we find that the execution book in the circuit clerk's office shows that there was issued an execution on the judgment in 1899 which was placed in the hands of the attorney for the plaintiff in the judgment and by him delivered to the then sheriff of the county. There is no record of the acts of the sheriff under that execution. It has been frequently determined in many instances in the law that parties and litigants will not be held liable for the derelictions of officers in the performance of their duties; that the rights of the citizen will be upheld when he has done all the things which the

law imposes upon him. An instance of this is that deeds are required to be indexed in the county court clerk's office, but the possessor of the deed will not be liable for the consequences of the clerk failing to do so if the deed has been properly lodged with the clerk for record by the one in whose favor it is executed. Herndon v. Ogg, 27 Ky. Law Rep. 268; Smith v. Chapman, 153 Ky. 70; Title Guaranty Co. v. Commonwealth, 141 Ky. 570; Bentley v. Letcher Co., 143 Ky. 585. Other analogous instances might be cited but the principle is clearly established.

It is shown from the evidence that a number of execution books, from some cause or other, have become misplaced or lost and cannot be found among the records of Leslie County. In view of the rule of law to which we have adverted and the facts shown by the clerk, and the prevailing presumption that an officer is presumed to do his duty until the contrary is shown, we do not feel authorized to treat the first execution as a nullity, or to refuse to give to it the necessary effect of keeping the judgment alive. Giving it this effect, a new period of limitations began to run from the time it was issued which had not expired when the second execution upon which this suit is based was issued.

Some question is made about the regularity of the pleadings and orders of court denying and controverting those of the appellant, Martha Morgan, as it is contended that the orders and pleadings constituting such denial were not made or filed as shown by the records of the Leslie Circuit Court, but they were no doubt treated as being in the case; and it is shown that the case was tried by Hon. J. M. Benton, Judge of the Clark Circuit Court, by agreement of all parties, and in the stipulation constituting the agreement, it is said:

"It is further stipulated that, if necessary, any pleading may be filed in this case before the said special judge, and when so filed, shall be taken and considered as though filed in this court in open court." The pleadings and orders in question were made and entered before such special judge in Winchester or some other place than in open court of the Leslie Circuit Court.

Under these circumstances, we are convinced that this objection is untenable. It therefore results that the judgment appealed from is correct and that it should be and is affirmed.