## Miller v. McLin, et al.

(Decided February 29, 1912.)

### Appeal from Wolfe Circuit Court.

1. Husband and Wife—Right of Wife as Against Creditors to Land Paid for by Her, But Deeded to Husband in Violation of Trust.—When the wife gives her money to her husband and he invests it in land, taking the title to himself, although it may have been agreed between them that the title should be taken to her, her claim will be subordinated to that of the creditors of the husband who are attempting to subject the land to the payment of debts created while the title was in the husband and without knowledge of the equity of the wife. When the wife permits the husband to take her money and invest it in his name, she occupies no better position so far as the creditors of the husband are concerned than would a stranger who had followed a like course of dealing.

2. Trusts—Rights of One Paying Consideration When Deed is made to Another—Construction of Section 2353, of the Kentucky Statutes.—This statute is only intended to assist persons paying the consideration to reclaim the property while it is in the possession of the person who took the deed to himself in violation of a trust or without the consent of the person paying the consideration, or while it is held by a volunteer or a purchaser with notice of the trust, and when the rights of creditors in good faith or without notice have not intervened.

GOURLEY, REDWINE & GOURLEY for appellants.

S. G. SAMPLE, A. F. BYRD and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a controversy between the widow and creditors of J. B. Miller, who died in 1906, and comes up in a suit to settle his estate. The widow claimed that the land, the title to which was in the deceased at the time of his death, was purchased partly with her money, and sought to have the deed reformed so that the title would be in her, and thus free from the demands of his creditors. On the other hand, the creditors insist that the land was paid for and owned by Miller and should be subjected to the payment of their debts. The lower court decided in favor of the creditors, and the widow appeals.

It appears that in 1890 Henry Murphy conveyed to Miller and his wife, in consideration of $600.00 in cash

a tract of land in Morgan county, called the "grassy creek farm," that Miller had bought some three years before but had not obtained a deed for. On the 16th day of January, 1904, Miller and his wife in consideration of $1,100, $500.00 of which was paid in cash and the remainder evidenced by note which was soon afterwards paid, re-conveyed this land to Murphy. In January, 1899, there was conveyed to Joseph B. Miller by the Master Commissioner of the Wolfe Circuit Court in consideration of $510.00 a tract of land known as the "Red Creek farm," and in March, 1903, Miller, and his wife sold this "Red Creek farm" to Clayton Noble for $1,000.00 in cash. In November, 1904, there was conveyed by Nathan Combs to Miller the land now in issue, known as the "Stillwater farm" in consideration of $2,000.00 in cash. Of this amount $1,200.00 was paid in money by Miller, and the other $800.00 was borrowed from the Bank of Campton, and a mortgage given to it on the land to secure the payment of the note.

It is the contention of Mrs. Miller that she paid the purchase price of the "Grassy Creek farm" and part of the purchase price of the "Red Creek farm," and that the deeds to these farms should have been made to her, but that her husband, in violation of an arrangement and agreement between them that the deeds should be so made, had the "Grassy Creek farm" deeded to himself and her jointly, and the "Red Creek farm" to himself alone. It is her further contention that the $1,200.00 paid Combs by Miller for the "Stillwater land" in dispute was realized from the sale of the "Grassy Creek farm" and the "Red Creek farm," and that she should be given this amount out of the purchase money in preference to the creditors of Miller. It is further insisted in her behalf that Miller after purchasing the "Stillwater land" cut therefrom and converted into lumber a number of the trees standing on the land at the time it was purchased and when the mortgage was executed to the Campton bank, and that the proceeds of this lumber—which was sold by the administrator of Miller—should be applied on the debt of the bank.

The lower court, after giving Mrs. Miller a homestead in the "Stillwater land," decided that as against the creditors of Miller she was not entitled to any part of the money realized from the sale of the "Stillwater land," and that the proceeds of the lumber was personal

estate in the hands of the administrator for the benefit of the creditors, and that the administrator should not be required to apply this money to the bank's debt, as the bank was not asserting any lien upon it. It is of this judgment that Mrs. Miller complains—insisting that she should be paid $1,200.00 out of the proceeds of the land, and that the money realized from the sale of the lumber should be applied to the payment of the bank's debt.

It thus appears that in 1903 or 1904 the Millers collected from the sale of the two farms $2,100.00, and there is evidence that out of this $2,100.00 was paid the $1,-200 cash payment on the "Stillwater land." But, as between Mrs. Miller and the creditors of Miller, she could not hold any part of the "Red Creek farm" and only one-half of the "Grassy Creek farm" to satisfy any money she may have furnished Miller to put in these farms. When the wife gives her money to her husband, and he invests it in land, taking the title to himself, although it may have been agreed between them that the title should be taken to her, her claim will be subordinated to that of the creditors of the husband who are attempting to subject the land to the payment of debts created while the title was in the husband and without knowledge of the equity of the wife. It would be manifestly unfair to creditors to let the wife take the land on the faith of which the husband was allowed to create debts. Hall v. Hall, 89 Ky., 514; Darnaby v. Darnaby, 14 Bush, 485. So that, when the "Grassy Creek farm" was sold, Mrs. Miller was entitled as against the creditors to one-half of the proceeds of the sale, or, $550.00; but, as to the "Red Creek farm," she was not entitled as against the creditors to any part of the sum realized from its sale. This being the situation when the "Stillwater land" was bought, and it appearing that $550.00 of Mrs. Miller's money received from the sale of her interest in the "Grassy Creek farm" was invested in this land, she was entitled to receive this amount from the sale of it, but not as against creditors whose debts were created subsequent to the purchase of the "stillwater land." It is true the wife is entitled to her property free from the debts and control of her husband. It is so provided in section 2127 of the Kentucky Statutes, reading—

"Marriage shall give to the husband, during the life of the wife, no estate or interest in the wife's property, real or personal, owned at the time or acquired after the

marriage.. During the existence of the marriage relation the wife shall hold and own all her estate to her separate and exclusive use, and free from the debts, liabilities or control of her husband. No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance; but her estate shall be liable for her debts and responsibilities contracted or incurred before marriage, and for such contracted after marriage, except as in this act provided.''

But this statute does not prevent the wife from giving to her husband as much of her property as she pleases, nor does it authorize the court in a contest between the .wife and the creditors of the husband to restore to her money or property that she has seen proper to furnish to her husband. A married woman can make contracts, sue and be sued, and she has the right under the existing law to make such disposition of her personal estate as she pleases, and when she permits her husband to take her money and invest it in his name, she occupies no better position so far as the creditors of her husband are concerned than would a stranger who had followed a like course of dealing. Section 2353 of the Kentucky Statutes is also relied on by counsel for Mrs. Miller. This section reads:

''When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the 'grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person.''

But this statute cannot be invoked to aid Mrs. Miller in defeating the creditors of her husband, whose debts were in good faith contracted after the conveyances were made to him, without notice of the fact that she furnished the money or that it was agreed the deed should be made to her. This statute is only intended to assist persons paying the consideration to re-claim property while it is in the possession of the person who took the deed to himself in violation of the trust without the consent of the person paying the consideration, or while it

is held by a volunteer or purchaser with notice of the trust it does not apply when the rights of creditors or purchasers in good faith and without notice have intervened. As the debts asserted by the creditors of Miller that were created subsequent to the purchase of the "Stillwater land" amount to more than $550, Mrs. Miller is not entitled to any part of this sum.

Nor can her contention that the proceeds of the lumber should be set apart to pay the mortgage debt be sustained. The bank is not asserting any lien on it, and whether it could successfully do so or not is a question not before us. The proceeds of this lumber is personal estate in the hands of the personal representative and is to be treated as any other personal estate.

Wherefore, the judgment of the lower court is affirmed.