## Taylor v. Fox's Executors, et al.

(Decided February 17, 1915.)

### Appeal from Oldham Circuit Court.

1. Trusts—Constructive Trustee.—Where property is impressed with a trust, and passes to a devisee by will, or to an heir by the laws of descent, or to a purchaser for value with a knowledge of the trust, or to a purchaser without valuable consideration, it is still impressed with the trust, and the devisee, heir, or purchaser is a constructive trustee for the beneficiary.

2. Trusts—Parol Constructive Trust.—Where one procures a testator to devise lands to him, upon his promise to hold it for the benefit of another, it creates a parol constructive trust, and may be enforced in equity upon parol testimony.

3. Trusts—Parol Trust.—A parol trust in lands will not be enforced, unless it shall be established by clear and undoubted testimony,

where the establishment of the trust will be contradictory to written instruments, and where a rational doubt is left in the mind of the court, as to the acts of the one alleged to have created the trust.

4. Trusts—When Equity Will Refuse Relief to Claimant of Trust.— Courts of equity will refuse relief to those claiming the existence of trusts, where the claim is old and stale, and the acts of the parties authorize a presumption unfavorable to its continuance.

A. T. LADD for appellant.

D. H. FRENCH and EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Mildred W. Taylor lived in Oldham County, Kentucky, where she died in March, 1886. She left surviving her as her only heirs-at-law, her sons, John F. Taylor, E. F. Taylor, E. M. Taylor, and her three surviving daughters, Mildred Smith, Jennie Whitesides, and Nannie W., Taylor, and Marcus, Marcia, Lucy, Ryan, Nannie, Mary Samuel, and Alice Blakemore, who were the children of a deceased daughter of Mildred W. Taylor. On the 16th day of February, 1885, she published her last will and testament, in which she first revoked all other wills theretofore made by her, and then devised to each of her heirs above named the sum of $1.00 each, except to Nannie W. Taylor, to whom she devised all of the rest and residue of her estate, and appointed her executrix of her will, providing in it that she should not be required to give sureties on her bond as executrix, and, further, provided that if she should fail to qualify, that D. H. French be made executor of her will. At the regular May term, 1886, of the Oldham County Court this will was admitted to probate upon the motion of Nannie W. Taylor, and all of the other heirs of Mildred W. Taylor, it seems, were summoned, and its probate was contested by all of her heirs excepting E. M. Taylor. It seems that previous to her death an estrangement had come about in the Taylor family, which grew out of a suit for the settlement of the estate of Mildred W. Taylor's husband, in which the widow, Mildred W. Taylor, and her daughter, Nannie W. Taylor, and her son, E. M. Taylor, were upon one side and the other heirs were upon the other side of the controversy.

A part of the property which was devised by this will to Nannie W. Taylor was a farm consisting of 91 acres, and situated upon the Floyds Fork. Nannie W. Taylor took possession of this farm and exclusively held, controlled, and used it from that time until her death, in the early part of the year, 1902. After the death of Mildred W. Taylor, Nannie W. Taylor married one Fox, who, however, died before she did. E. M. Taylor likewise became married.

On the 16th day of December, 1911, Nannie W. Fox (late Taylor) published her last will and testament, by which she devised to her nephew, Zhale Smith, the Floyds Fork farm of 91 acres, and to her niece, Nannie W. De-Busk, sister of Zhale Smith, all of the rest of her property, a part of which was a farm near LaGrange, in Oldham County. This will was regularly probated and admitted to record in the Oldham County Court at its regular March term, 1912, but it does not appear that any of the heirs of Nannie W. Fox were summoned to appear and answer the motion to probate it.

On the 11th day of March, 1912, Nannie W. Fox, late Taylor, executed and delivered to Zhale Smith a deed, by which she conveyed to him the Floyds Fork farm, expressing in the deed a consideration of "$1.00 cash, love and affection, and other good and valuable considerations received from the second party."

On the 7th day of October, 1913, the appellant filed his petition in equity in the Oldham Circuit Court, making Zhale Smith and D. H. French, executor of the will of Nannie W. Fox, defendants, in which he plead and claimed that at the time and before the execution and publication of the will of his mother, Mildred W. Taylor, that he and his sister, Nannie W. Fox, and their mother, Mildred W. Taylor, had made a parol agreement that the mother would convey the Floyds Fork farm to Nannie W. Fox upon the condition that Nannie W. Fox should hold it in trust for him, and that he and she should jointly use the farm during their joint lives, and that the survivor should have all of the farm in fee, and in the event he should survive Nannie W. Fox, she would provide for this event by executing to him a deed of conveyance, by which she would convey the farm to him, or she would by will devise it to him to take effect at her death, and further alleging that Nannie W. Fox had failed to perform that agreement by failing in her

lifetime to convey the land to him by deed, or to devise it to him by will, but had wrongfully, and in violation of his rights as *cestui que* trust in the land, had devised it to Zhale Smith, and that her will had been probated without notice to him, and that Smith held the land in trust for him by reason of the agreement, and asking that he be adjudged to be the owner of the land, and that Smith be required to convey it to him.

Thereafter, on the 8th day of October, 1913, the appellant filed an amended petition, in which he alleged that he had learned that the decedent, Nannie W. Fox, had conveyed the land to Zhale Smith by a deed previous to her death, and that this deed was a violation of the contract set up in the petition, and failed to perform the trust assumed by Nannie W. Fox, and by an amended petition filed on January 5th, 1914, the appellant alleged that the making of the deed by Nannie W. Fox to Zhale Smith, and her failure to deed and devise the land to appellant, was done wrongfully and fraudulently; and thereafter he filed another amended petition, in which he alleged, if there was a written paper relating to the Floyds Fork farm, executed by Mildred W. Taylor, that its terms were the same as the parol agreement set up in his petition, and was the same in substance and effect; that he had never had such paper in his possession, and does not know whether or not it exists, and asked the court to require the defendants to produce it in court, if they had such paper.

Thereafter, by another amended petition, the appellant alleged that the deed made by Nannie W. Fox to Zhale Smith on March 11, 1912, was in violation of the trust theretofore mentioned in his pleadings, and that the deed was without any consideration, either good or valuable, and was fraudulently and wrongfully made by Nannie W. Fox, and for that reason was void, and asked that both the deed and will be set aside. A general demurrer of the appellees to the petition as amended, excluding the last amended petition, was sustained by the court, which caused the filing of the last amended petition, but before this amendment the appellees filed separate answers. The answers denied the parol agreement set up and relied upon by the appellant, and the answer of Smith also alleged that the land had been conveyed to him pursuant to a contract which he had theretofore made with the testatrix, Nannie W. Fox, and was

for a good and valuable consideration; that with the knowledge of the appellant he had put valuable and lasting improvements on the land, and that appellant had failed to give him any notice of his claim to the ownership of the land, and that for that reason the appellant was estopped to claim the land or to sue for it. The affirmative allegations in these answers were properly traversed by replies. The evidence of a number of witnesses was taken by depositions upon either side, and the chancellor below, upon a hearing of the case, dismissed the petition of the appellant, to which he excepted, and appealed to this court.

Although the appellee, Smith, alleges in his answer that the deed and will by which he claims title to the land was made by Nannie W. Fox for a good and valuable consideration passing from him to her, and in pursuance of a contract made long theretofore, he fails to state what the consideration was that he paid for the land, or that he paid it without knowledge of the claim of appellant, that the land was held in trust for him, and appellant does not allege that Smith had any knowledge of this alleged trust at any time before the bringing of the suit, but contents himself with denying that the devise or conveyance to Smith was on account of any valuable consideration, and alleging in fact that it was made without any valuable consideration paid by Smith, and was done fraudulently by Nannie W. Fox. Under this state of the pleadings, it seems that the claim of Smith to be a purchaser of the land for a valuable consideration is eliminated as a defense for him, for a purchase by him of the land, if it was then impressed with this trust, and he had knowledge of the trust at the time of his purchase, although his purchase was by a valuable consideration paid by him, he then became himself a constructive trustee for the appellant, and his answer upon that subject was not sufficient to present a valid defense for him, as the mere fact of his being a purchaser for value did not constitute a defense, and if the conveyance or devise to him was voluntary and without valuable consideration, the land would still be impressed with the alleged trust, if it existed in fact.

The Superior Court, in the case of Rogers' Executor v. Reed, 14 R., 812, said: "Wherever property which is already impressed with a trust of any kind, expressed or by operation of law, is conveyed or transferred by the

trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then such heir, devisee, or other voluntary transferee, or purchaser with notice, becomes himself a constructive trustee for the original beneficiary." It is, however, proper to say that the evidence does not even remotely indicate that Smith ever had any knowledge that the alleged trust existed.

The question remaining for determination, and upon which a proper decision of the court depends, is: Did Mildred W. Taylor create and impress upon the lands a trust for the benefit of appellant? The issue upon that question is made squarely in the pleadings and upon the proof. The contention of appellee that this case is one coming within the rule laid down in Speers v. Sewell, 4 Bush, 239, and in Rucker v. Abel, 8 B. M., 566, and other similar cases, is not well made, because in those cases the parties were those to whom parol gifts and sales of lands had been made by the owners of the titles in the lands, and the court held that such attempted gifts and sales were within the statute of frauds, and not enforceable. The contention of the appellant in this case is that his mother, Mildred W. Taylor, was the owner of the land, and designing to devise it to his sister, Nannie W. Fox, and himself jointly, that the sister procured the mother to devise the entire lands to her by promising her mother that he should use it jointly with her during their joint lives, and, in the event she (the daughter) should die before appellant, that she would either convey the entire lands to him by deed, or devise them to him by will, and that by means of such promise to her mother she procured her mother to devise the lands to her, and that she failed to keep this promise and conveyed and devised the lands to appellee, Smith, and he, having received them without any valuable consideration paid for them by him, that Nannie W. Fox held them in trust for him while living and since her conveyance to Smith that Smith held them in trust for him. This was not a parol contract by the owner, Mildred W. Taylor, to transfer the lands to appellant, but the promise came, if made, from Nannie W. Fox to convey the lands to appellant. This court has held in cases of Caldwell v. Caldwell, 7 Bush, 515; Becker v. Neurath, 149 Ky., 421; and Chap-

man v. Chapman, et al., 152 Ky., 344, that a state of facts similar to those alleged in this case creates a trust, which may be enforced upon parol testimony. In the first mentioned case it is called a latent trust, and in the two last mentioned, a parol constructive trust. The courts of equity, in which such trusts may be enforced, base their action upon the principle that whenever any one obtains the title to property, real or personal, by such means and under such circumstances as would make it unconscionable for such person to hold it and enjoy it, the rules of equity create a constructive trust in the property in favor of the true owner, and it continues impressed with that trust until it goes into the hands of a good faith purchaser without notice. Such trusts usually arise from actual fraudulent conduct in obtaining the title to the property, but they may also arise from conduct which is constructively fraudulent.

As a general rule, if an absolute devise is made, the intention of the testator that the devisee is to hold the property in trust for some one else cannot be shown by evidence other than by the will itself, but an exception is made where a devisee obtains the title to property by a promise to the testator that he will hold it for another, and afterwards refuses to do so, and sets up claim to it himself. 40 Cyc., 1754, 1755.

A parol trust must necessarily be established by parol testimony. In the case of Roche, et al. v. George's Exr., et al., 93 Ky., 609, this court said: "A trust created by parol will be enforced where it is established by certain and undoubted testimony, and such as to leave in the mind of the court no rational doubt as to the act of the testator."

In the case of Northcutt v. Hogan, 4 R., 364, the Superior Court held: "In an action to enforce a parol trust concerning land, or the proceeds thereof, such trust must not only be clearly alleged, but, as against written instruments, must be established by clear and satisfactory testimony."

In the light of the above stated principles of equity, applicable to a case of the character of the one at bar, it seems that the whole matter depends upon a proper consideration of the testimony, and the weight to be given to it. To say the least of it, in many respects, it is very contradictory, and to hold that it establishes a parol trust in accordance with the contention of appel-

lant, or that it does not do so, as appellees contend, leaves in either instance some facts apparently proven, which are very difficult to account for, consistently with the holding. The testatrix, Mildred W. Taylor, is dead, and so is Nannie W. Fox. The appellant and the appellee, Smith, are not offered as witnesses, except the appellant is offered in rebuttal. Very little that either of them might know could be competent evidence. The evidence for appellant is made up almost entirely of declarations and admissions, alleged to have been made by Mildred W. Taylor and Nannie W. Fox. All of this proof, with the exceptions of that made by two witnesses, is by persons who testify to declarations made by these two ladies from twenty-five to thirty years ago in conversation and gossip with their neighbors. Some of these witnesses relate declarations of Mildred W. Taylor, in which she said that she intended to give the Floyds Fork farm to her son, E. M. Taylor, and Nannie W. Fox, or that she desired them to have her property, the longest liver to have it all; and some of them relate declarations by Mildred W. Taylor and Nannie W. Fox to the effect that a writing or will had been executed, and that it provided that whichever, E. M. Taylor or Nannie W. Fox, lived the longer was to have the whole property. One of these witnesses says that Mrs. Fox thought that E. M. Taylor was to have all of the Floyds Fork farm. Another one says that Mrs. Fox said that a will had been made, which was to the effect that she or E. M. Taylor, whichever lived the longer, should have the whole property. Another says that Mrs. Fox said to him that she and E. M. Taylor owned the Floyds Fork farm. It would be exceedingly difficult from all of these declarations, as proven by these witnesses, to sift out the exact interest which either appellant, E. M. Taylor, or Mrs. Fox was to have in the property. It is more consistent with all the facts and circumstances of this case to arrive at the conclusion, that at some time previous to her death, Mildred W. Taylor had contemplated making a disposition of her property in accordance with the truth of these declarations, and probably had made a will to that effect, but before making her last will and testament she had changed her mind and made a different disposition as set forth in her will. It is true that two witnesses, a husband and wife, testified that only a year or two before her death, Mrs. Fox said that an

agreement had been made that appellant was to have the Floyds Fork farm after her death, but these witnesses appear to be very antagonistic to appellee, Smith. The character of evidence offered in this case to support the contention of appellant is of that character which is considered as the weakest known to the law. Pool, et al. v. Thomas, et al., 10 R., 92. Upon the other hand, the will of Mildred W. Taylor gives to the appellant the same that is devised to each of her children, except Mrs. Fox. The devise of all of her property to Mrs. Fox is made by these significant words: "To my daughter, Nannie W. Taylor, who has never left me, and who has always since she was old enough waited on and cared for me with self-sacrificing devotion, I will, give, and etc.," * * * *

No reason is made or offered why the mother, intending that the appellant should enjoy the use of the property jointly with Mrs. Fox, and that he should have it in fee, if he outlived Mrs. Fox, did not so devise it by the terms of her will, instead of devising it unconditionally to Mrs. Fox. In the case of Caldwell, et al. v. Caldwell, et al., *supra,* the testator devised his son James' portion to his other children in trust for him, because that son was in the Confederate Army, and he feared that because of that fact his property would be forfeited and lost to him. In the case of Rucker v. Neurath, *supra,* the conveyance was made to the wife, in trust for the children by a former wife, in order to provide a reasonable competence for the wife during her lifetime. In Chapman v. Chapman, *supra,* the lands were devised to the father of testator in trust for three grandchildren, in consideration of the father, also, devising all of his property to the three grandchildren.

The appellant contends that under the trust alleged he was to have the joint use of the farm during the joint lives of himself and Mrs. Fox, and if he had this right it was one that he did not have to await her death to enforce, but it seems that he permitted more than twenty-five years to elapse, and until her death, without ever claiming or making any demand to enjoy any interest in the farm, and allowed his claim, to that extent at least, to become stale. While the rights of one arising from an express and continuing trust are not within the statute of limitations, the courts of equity will deny relief upon old and stale claims, where the acts of the

parties authorize a presumption unfavorable to its continuance. Helm's Exr. v. Rogers, 81 Ky., 568. Much of the testimony offered by the appellees tends strongly to prove that appellant did not during the lifetime of Mrs. Fox claim any interest in the farm in controversy, and considering all the testimony together it cannot be said that a trust for the benefit of appellant in the farm has been established by such certain and undoubted testimony that it leaves in the mind of the court no rational doubt as to the act of the testator in that regard.

We are, therefore, constrained to the opinion that the chancellor did not err in the judgment below, and it is therefore affirmed.