## Thrasher et ux. v. Craft.

(Decided January 22, 1932.)

102

TANNER OTTLEY for appellants.

B. L. SIMPSON and C. R. HICKS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from the Cumberland circuit court, wherein the appellants seek to reverse the judgment recovered by the appellee setting aside a deed made between them as fraudulent and subjecting the property conveyed to the satisfaction of the appellee's debt.

The facts are these:

The appellant and coappellant, E. H. and Zelma Thrasher, are husband and wife. The appellant, E. H. Thrasher and appellee, Bertha Craft, are brother and sister and the children of A. J. Thrasher, deceased.

On February 17, 1923, Sam Rush and wife conveyed to E. H. Thrasher and Zelma Thrasher, his wife, a farm of some 160 acres, lying in White's Bottom, Cumberland county, Ky., in consideration of the sum of $6,000 cash in hand paid. The deed was, after being duly recorded on February 19, 1923, taken by E. H. Thrasher to the home of himself and wife, where it was filed away and has since been kept. From this time, February 19,

1923, E. H. Thrasher has been and thereby remained the holder of record title to an undivided one-half interest in the lands until he conveyed the same to his wife, Zelma Thrasher, on November 1, 1929, which conveyance, however, was not acknowledged nor put to record until March 4, 1930.

The $6,000 paid Rush for this farm, it is undisputed, was furnished to Zelma Thrasher by her father, M. F. Parmley; $2,000 of this amount, he and the appellants claimed, was given by him to his daughter, and the remaining $4,000 was loaned her upon her notes taken therefor, without interest, and without taking a lien upon the farm bought with this amount. This $6,000, thus secured by Zelma Thrasher, was by her turned over to her husband, E. H. Thrasher, to buy this farm. No directions were given E. H. Thrasher, either by his wife or her father, who advanced the money to her, as to how he should take deed to the purchased property, and a joint deed to himself and wife was, under his express directions, made them.

On January 9, 1927, E. H. Thrasher borrowed from his father, A. J. Thrasher, the sum of $400, for which amount he executed him his note, payable to him one day after date and bearing interest from date.

On March 19, 1929, A. J. Thrasher transferred this $400 note to his daughter, Bertha Craft, the appellee, the assignment to her being duly attested and indorsed upon the note as of that date, which was shortly before the death of A. J. Thrasher in April, 1929. Soon after this, Bertha Craft unsuccessfully sought payment of this note from her brother, E. H. Thrasher, which he refused and continued to refuse to pay, with the result that he was threatened with suit by her for its recovery.

While the appellant, E. H. Thrasher, was thus being threatened with suit upon his note, which fact was known to his wife, the coappellant Zelma Thrasher, and discussed by them, the appellant E. H. Thrasher conveyed her on November 1, 1929, for the recited consideration of $1, his interest in the Sam Rush farm, which he had acquired therein by the joint deed made himself and wife by Sam Rush in 1923 and further, by this deed, conveyed her "all his interest in all live stock and farming tools."

In February, 1930, the appellee, Bertha Craft, filed suit in the Cumberland circuit court against E. H.

Thrasher, seeking recovery upon the $400 note assigned her, which he unsuccessfully defended. Upon the trial, "after hearing all the evidence offered by both sides," the court, upon its own motion, directed the jury to find a verdict for the plaintiff, upon which judgment was entered for her debt, interest, and costs at its August term, 1930. Execution was issued upon this judgment in September, next following, and returned on October 6, next thereafter, indorsed, "No property found."

Upon the judgment recovered by Bertha Craft and the return made thereon, she later in October, 1930, fiJ this, her suit in equity, against E. H. Thrasher and Zelma Thrasher, attacking, under sections 1906, 1907, and 1907a of the Kentucky Statutes, the conveyance of November 1, 1929, of the appellant E. H. Thrasher to his wife, the coappellant Zelma Thrasher, upon the grounds that it was voluntarily made, without any consideration, and conveyed her for the fraudulent purpose of preventing the property from being subjected to the payment of her debt. She prayed that the deed be set aside and that she be adjudged a lien upon the land, that same be enforced, and the land sold, or a sufficiency thereof, to satisfy her judgment, interest, and costs.

The appellants, E. H. Thrasher and Zelma Thrasher, filed their joint and separate answers, traversing the averments of the petition. Zelma Thrasher further therein affirmatively alleged that she was the wife of the appellant E. H. Thrasher; that about the time of the threatened common-law suit of Bertha Craft against E. H. Thrasher, she discovered that the Rush farm, which had been bought by her husband with money partly given and partly loaned her by her father, M. F. Parmley, had been conveyed jointly to herself and husband, rather than to herself alone, and averred that she then demanded that the coappellant, E. H. Thrasher, make her a deed to the one-half interest in the farm so deeded in his name; that all these facts were known to the appellee, Bertha Craft, before she became the owner of the said $400 note sued on; that the said E. H. Thrasher, to rectify the wrong done her by taking a joint deed to the property, deeded his one-half interest, thus secured in the farm, to her on the 1st day of November, 1929, for the alleged purpose of thus discharging the resulting trust claimed as to this one-half interest in the land, on the ground that she paid the entire consideration therefor, though deed to it was

wrongfully taken in her husband's name without her knowledge and consent.

To these answers, the appellee filed her reply, denying their affirmative averments.

Upon submission of the cause, the chancellor granted the appellee the relief prayed for in her petition by adjudging that the appellant's, E. H. Thrasher's deed of November 1, 1929, conveying his one-half interest in the land to his wife, Zelma Thrasher, be set aside, and that a sufficiency of the land, so conveyed by the deed, be subjected to the satisfaction of appellee's debt, interest, and costs.

From this judgment, the appellants have prosecuted this appeal, seeking its reversal.

The appellants very earnestly contend that the judgment is erroneous in setting aside this deed and subjecting the land conveyed by it to the payment of the appellee's debt, upon the ground that it was not a fraudulent conveyance as to the appellee, Bertha Craft, who they maintain was a creditor with notice of both Parmley's and Zelma Thrasher's latent equities in the land. They also contend that the chancellor's finding that there was no resulting trust in the land in favor of Zelma Thrasher, constituting a valuable consideration supporting her husband's conveyance thereof to her, is erroneous.

As was said by this court in the case of Griggs v. Crane's Trustee, 179 Ky. 48, 200 S. W. 317, 318:

> "The general rule is that in actions to secure the appropriation of property, the title to which appears to be in another, to the satisfaction of the debts of a debtor, upon the ground that the property is in reality that of the debtor, but is being fraudulently held by another to prevent its subjection to the debts of the real owner, the burden is upon the one alleging the fraud to show that the property is owned by the debtor and has been fraudulently transferred to the owner. National Roofing Materials Co. v. Smith, 165 Ky. 848, 178 S. W. 1125; Guthrie v. Hill, 138 Ky. 181, 127 S. W. 767; Ruby & Co. v. Jamison, 143 Ky. 486, 136 S. W. 909; Cogar v. National Bank, Etc., 151 Ky. 470, 152 S. W. 278; Aultman & Taylor Machinery Co. v. Walker, Etc., 138 Ky. 835, 124 S. W. 329, 129 S. W. 303; Blackwell v. O'Neal et al., 152 Ky. 563, 153 S. W. 721. It is also the gen-

eral rule that where it is charged that a deed was executed without consideration and therefore fraudulent as to existing debts, and the want of consideration is denied by the answer, the burden is upon the one alleging the want of consideration to prove it. White's Adm'x v. White et al., 148 Ky. 492, 146 S. W. 1101. . . .

"The burden of providing the good faith of a conveyance, where it is attached on account of its having been fraudulently made, shifts from the one alleging the fraud to the one defending the integrity of the conveyance, when the conveyance is attended with what is denominated in the books as badges of fraud . . . Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; Commonwealth v. Filiatreau, 161 Ky. 434, 170 S. W. 1182; Stix v. Calender, 155 Ky. 806, 160 S. W. 514; Treadway v. Hogg [Ky.], 119 S. W. 742; Wiggington v. Minter [Ky.], 88 S. W. 1082, 28 Ky. Law Rep. 79; Oldham's Adm'x v. Oldham, 141 Ky. 526, 133 S. W. 232; Lavelle v. Clark, 38 S. W. 481, 18 Ky. Law Rep. 759."

The appellee plants her action squarely upon sections 1906, 1907, and 1907a of the Kentucky Statutes.

In creditor's suit to cancel husband's deed to his wife, slight evidence, where badges of fraud are shown attending the conveyance, will shift to her the burden of rebutting the inferences thereby created and sustaining the bona fides of the transaction. Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S. W. (2d) 975; Dotson v. People's Bank, 234 Ky. 139, 27 S. W. (2d) 673; Magic City Coal & Feed Co., et al. v. Lewis, et al., 164 Ky. 454, 175 S. W. 992.

The evidence in the case at bar disclosed as badges of fraud attending the appellant's conveyance of the land involved in this litigation to his wife, Zelma Thrasher, that he was at the time hard-pressed and being threatened with suit by his sister, the appellee Bertha Craft, for the collection of his $400 note. Also, that in said deed conveying his land to his wife, he, in addition thereto, conveyed her "all his interest in the live stock and tools," which constituted, it appears, his whole estate. Further, that when the threatened suit was not filed against him, he delayed acknowledging and record-

ing deed for some months thereafter until March 4, 1930, or the very day upon which he was served with process in her then pending common law action, and, further, that he was insolvent at the time of making the conveyance of this one-half interest in the farm costing $6,000 to her for the recited consideration of $1. Zelma Thrasher, in her own testimony, states that the threatened suit of appellee against her husband was at the time discussed by them and she thereupon made preparation to get the land back, by having him deed it to her. It is satisfactorily shown that the liability of E. H. Thrasher on the $400 note was created some four years subsequent to the recording of the Rush deed. It is claimed by appellants that A. J. Thrasher, at the time of accepting the note for his loan, and also that the appellee, Bertha Craft, before she became the assignee of the note, had notice of the appellant Zelma Thrasher's claimed latent equity. On the contrary, there is here no evidence supporting such contention as to A. J. Thrasher, and Bertha Craft's testimony is directly to the effect that both the appellants, her brother E. H. Thrasher and his wife Zelma Thrasher, repeatedly told her that this Rush land, jointly conveyed them, belonged to them both; that Zelma told her that her husband, Holland, when purchasing the land, wanted to have it deeded solely to her because her father, Mr. Parmley, had paid for it, but she had told him that she wouldn't have a place unless it belonged to one as much as the other. The appellant E. H. Thrasher had also often said to her that the land belonged to them both and also they had both told her that Mr. Parmley gave Zelma $3,000 of the $6,000 he furnished her to pay for the land and that her husband, Holland, was to pay the other $3,000 she owed her father. Taft Thrasher, who is a disinterested witness, also testified that like statements were made by the appellants to him, while living at their home with them shortly after their purchase of the farm. The appellants deny making such statements, it is true, yet all of this evidence furnishes badges of fraud attending the conveyance and negatives the claim of appellants that Bertha Craft became a creditor with notice of the claim of Zelma Thrasher to a latent equity or that there was created, under the circumstances related, a resulting trust interest in the land herein involved.

These circumstances shown attending this conveyance of husband to wife, attacked as fraudulent, were

undoubtedly sufficient to shift the burden of maintaining its integrity upon the grantee, and she has signally failed to establish the bona fides of the voluntary deed, unless she can defend it as supported by her latent equity claimed under section 2353 of the Kentucky Statutes. Under this section, it was incumbent upon the appellants to show, not only that the conveyance to her was without fraudulent intent, but was also supported by a meritorious consideration, furnished by the resulting trust claimed created in grantee's favor in the land, of which appellee had notice in order to give her an equity therein superior under this section of the Statutes to that of the appellee, claimed under sections 1906, 1907, and 1907a, upon which she relies and bases her cause of action.

Section 2353 of the Statutes reads as follows:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taking a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person."

In the case of Neel's Executor et al. v. Noland's Heirs, 166 Ky. 455, 179 S. W. 430, 433, this court said:

"This statute abolishes the old equitable doctrine of resulting trusts except in two cases: (1) Where the title is taken in the name of the nominal purchaser without the consent of the real purchaser; and (2) where the grantee, in violation of some trust, buys the land with the money or property of another. Foushee v. Foushee, 163 Ky. 524, 173 S. W. 1115.

"In view of the well-established doctrine in this jurisdiction upon the subject of resulting trusts, we hardly deem it necessary to again review the authorities, at length."

See, also, Roche v. Roche, 188 Ky. 327, 222 S. W. 86.

Further in the course of its opinion, the case of May v. May, 161 Ky. 114, 170 S. W. 537, was cited, wherein this question was considered at length and the rule as

stated in Devlin on Real Estate (3d Ed.) vol. 2, sec. 1183, was quoted with approval:

"'As it is sought, in attempting to establish a resulting trust, to raise an equity superior to the deed, and thus give it an effect not apparent upon its face, the proof that one other than the grantee is beneficially interested must be clear and convincing. . . .'

"This doctrine is fully established in this jurisdiction by a long line of decisions. Snelling v. Utterback, 1 Bibb, 609, 4 Am. Dec. 661; Northcutt v. Hogan, 4 Ky. Law Rep. 364; Pool v. Thomas, 8 S. W. 198, 10 Ky. Law Rep. 92; Nelson v. Nelson, 96 S. W. 794, 29 Ky. Law Rep. 885; Couch v. Sizemore, 106 S. W. 801, 32 Ky. Lew Rep. 641; Roche v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039, 14 Ky. Law Rep. 584; Helm's Ex'r v. Rogers, 81 Ky. 568; Smick's Adm'r v. Beswick's Adm'r, 113 Ky. 439, 68 S. W. 439, 24 Ky. Law Rep. 276; Taylor v. Fox's Ex'r, 162 Ky. 804, 173 S. W. 154; Foushee v. Foushe, 162 Ky. 524, 173 S. W. 1115."

Measured by the rule as laid down in these cases, the appellants have failed to establish that E. H. Thrasher took title to the land against coappellant's consent or in violation of any trust imposed in him, either by her or by Mr. Parmley, her father, that he would use this money furnished by him to his daughter, Zelma Thrasher, in the purchase of the Rush land for her alone. Under the testimony given herein by Zelma Thrasher, she states that the money received from her father, Parmley, by her was turned over to her husband, E. H. Thrasher, in February, 1923, to buy the Rush farm, but that she did not, at the time, tell him how to have the deed thereto made. She further states that $2,000 of the $6,000 furnished by her father was given to her and that her husband, the appellant E. H. Thrasher, "taken the other $4,000. and was to pay for it." Also, when asked the question, "You bought it then, and it was to belong to you?" she answered: "Yes, sir, it was to belong to us." She was also asked, "Did you tell Taft Thrasher that you and Holland owned it together?" and answered, "If I ever mentioned it to him I don't remember of it. He wasn't ever there until Grandmother Thrasher died, and he then stayed there three months."

Taft Thrasher testified that he had heard the appellants say that Mr. Parmley gave Zelma $3,000 and loaned her the other $3,000 to pay for the balance and Holland (E. H. Thrasher) was to pay it when he could and that Holland told him he had paid $400 on it and said it made him feel good that he was getting it paid for.

Also, this deed, whereby Sam Rush conveyed the appellants this property jointly in 1923, was, from such time until November, 1929, the appellants state, kept in their home, where, so far as the evidence discloses, it was accessible and available for Zelma Thrasher to read and examine whenever she wished, and continuous opportunity was thus afforded her to learn and fully inform herself as to the manner in which her husband had executed the trust she claims to have imposed in him, to buy the farm solely for her. The means of informing herself, being conveniently at hand during all these years, and knowing that, if her husband through error or mistake had taken title to the land in himself, it might reasonably be expected that credit would be extended him on the faith of his apparent title, it may well now be insisted by appellee that Zelma Thrasher, having so long neglected to learn of the deed having been made and recorded by her husband as a joint deed and suffered by appellant to so remain until after credit had been extended him, it may be assumed on the faith of his apparent title to the land and credit given him without notice of her claim of an equity therein, that she is now by her negligence estopped to interpose her alleged equity to the land as prior and superior to that of appellee, a creditor whose debt arose subsequent to the recording of the joint deed to appellants and without notice of her claim to a latent equity therein.

From our review and consideration of the record, we conclude that the chancellor's adjudging appellee the relief prayed for in setting aside the deed, herein attacked, and directing that the land be subjected to the satisfaction of her debt, was not against the preponderance of evidence nor prejudicial to the substantial rights of the appellants, whether in so adjudging this relief to the appellee he found in favor of or against appellant's claim to a resulting trust in the property conveyed her, as a finding either way, upon this contention and defense of appellants, would have been indeterminate of appellee's right, as a creditor whose debt against E. H.

Thrasher was incurred subsequent to and while he was, and suffered to remain, the apparent owner or record holder of title to the land and when appellee was without notice of his wife's latent equity or claim to a resulting trust therein. From this it follows that appellee's lien acquired against the land must be preferred to the appellant's, so far as her claim to the land is concerned, regardless of whether she furnished her husband the consideration with which to buy the land for her, as she contends, and title taken to him without her consent. Such was the rule announced and the holding of this court in the case of Miller v. McLin et al., reported in 147 Ky. 248, 143 S. W. 1008, 1009, the facts of which are almost analogous with those of the case at bar. In this case the court said:

> "When the wife gives her money to her husband, and he invests it in land, taking the title to himself, although it may have been agreed between them that the title should be taken to her, her claim will be subordinated to that of the creditors of the husband who are attempting to subject the land to the payment of debts created while the title was in the husband and without knowledge of the equity of the wife. It would be manifestly unfair to creditors to let the wife take the land on the faith of which the husband was allowed to create debts. Hall v. Hall, 89 Ky. 514, 12 S. W. 945, 11 Ky. Law Rep. 715; Daraby v. Darnaby, 14 Bush 485."

And did further in its opinion, in answer to the pleading of section 2353 of the Kentucky Statutes relied on by counsel for the wife, state as follows:

> "This statute is only intended to assist persons paying the consideration to reclaim property while it is in the possession of the person who took the deed to himself in violation of the trust, without the consent of the person paying the consideration, or, while it is held by a volunteer or purchaser with notice of the trust, it does not apply when the rights of creditors or purchasers in good faith and without notice have intervened."

In the later case of Phillips v. Bowles et al., 209 Ky. 580, 273 S. W. 85, coming before this court, where the facts were almost identical with both the Miller Case,

supra, and with the case at bar, it was shown by the evidence that the property in question was paid for with funds of the wife and that the husband took title thereto when he bought in the property for her at a commissioner's sale, without her knowledge or consent, and through some error and mistake. Hence was created a resulting trust in said land in favor of the wife in view of Kentucky Statutes, section 2353. This court in its opinion, delivered by Judge Dietzman, adopted and quoted with approval the rule of law as in Miller v. McLin, supra, declared and applied its opinion as quoted, supra, adding thereto the further statement, equally applicable here, as expressing the rationale of its decision:

"It is satisfactorily shown here that a large amount of indebtedness of appellant's husband was created subsequent to the recording of the deed in which he took title to his wife's property. It is not shown that any of these creditors had notice of appellant's latent equity. Not only do we know that business is transacted on the faith of a person's apparent title to land, but it is also affirmatively shown here that appellant's husband on several occasions represented himself to certain creditors as the actual owner of this land. Since it is not shown that any of these subsequent creditors had notice of appellant's latent equity, they must be preferred to appellant so far as their claims are concerned."

Finding no error authorizing a reversal of the judgment of the lower court, and it being in accordance with these views, it is affirmed.